UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 23-00064-01 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LAMORRIS ALLAN FRENCH | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant LaMorris Allan French's ("French") Motion to Withdraw Guilty Plea and to Dismiss the Indictment. See Record Document 27. The Defendant moves to dismiss the one-count indictment, under which he is charged with possessing firearms and ammunition in violation of 18 U.S.C. § 922(g)(1). He also moves to withdraw his guilty plea. The United States of America ("the Government") filed an opposition to the motion. See Record Document 30. French replied. See Record Document 32. After careful consideration of the parties' submissions, and the law applicable before the Court, Defendant's Motion to Withdraw Guilty Plea and to Dismiss the Indictment is **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 22, 2023, a federal grand jury returned a one-count indictment against French. See Record Document 1. The count reads:

> On or about April 18, 2022, in the Western District of Louisiana, the defendant, LaMorris Allan French, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed in and affecting commerce a firearm, to wit: a FN pistol, Model: 509, Caliber: 9 x 19, and ammunition, all in violation of Title 18, United States Code, Section 922(g)(1).

Id. Thus, French is charged with possessing a firearm in violation of 18 U.S.C. § 922(g)(1). See id.

In his Motion to Withdraw Guilty Plea and to Dismiss the Indictment, French challenges the validity of Section 922(g)(1) as it purportedly "violates the Second Amendment's guarantee of 'the right of the people to keep and bear arms.'" Record Document 27 at 3-4. Section 922(g)(1) states:

> (g) It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). French argues that, under recent Supreme Court precedent in District of Columbia v. Heller, 554 U.S. 570 (2008), and New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (2022), Section 922(g)(1) should be struck down as unconstitutional. See Record Document 27 at 4-5. He also argues that Section 922(g)(1)'s prohibition against felons possessing firearms is not supported by any enumerated power granted to Congress in the Constitution and lies beyond the reach of the Commerce Clause. See id. at 4.

French seeks to withdraw his guilty plea and have this Court grant his Motion to Dismiss the Indictment on the grounds that Section 922(g)(1) is purportedly unconstitutional, rendering him legally innocent of the charge. See Record Document 27 at 3. French argues that since legal innocence qualifies as a recognized "fair and just reason" for withdrawal of a guilty plea, this Court should exercise its authority and withdraw it. Id.

In response, the Government argues that <u>Bruen</u> did not call into question felon-dispossession statutes and is therefore inapplicable in this case. <u>See</u> Record Document 30 at 2. Further, <u>Bruen</u> concerned firearm regulations aimed at "law abiding citizens" and not a statute, namely Section 922(g)(1), that has elements that limit itself to regulating non-law-abiding citizens. <u>Id.</u> at 6. The Government also argues that even if <u>Bruen</u> applied, Section 922(g)(1) would satisfy its historical tradition test. <u>Id.</u> The Government cites to settled law as its grounds for rejection of French's claim regarding the Commerce Clause element of Section 922(g)(1). <u>Id.</u> at 21. The Government argues that because the only reason that the defendant seeks to withdraw the guilty plea is his incorrect assertion that Section 922(g)(1) is unconstitutional, the Motion to Withdraw the Guilty Plea should also be denied. <u>Id.</u> at 1.

**LAW AND ANALYSIS**

**I.   Law**

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. However, it is well-established that, ""[l]ike most rights, the right secured by the Second Amendment is not unlimited." <u>Heller</u>, 554 U.S. at 626. Thus, under the Supreme Court's most recent guidance in <u>Bruen</u>, courts must engage in a two-step inquiry to determine whether a regulation placing restrictions on a party's Second Amendment rights is constitutional. <u>Bruen</u>, 142 S. Ct. at 2129–30. First, a court must ask whether "the Second Amendment's plain text covers an individual's conduct." <u>Id.</u> If the Second Amendment does cover the individual's conduct, the court then must ask whether "the regulation is consistent with

this Nation's historical tradition of firearm regulation." Id. Only where the regulation is "consistent with the Second Amendment's text and historical understanding" can it pass constitutional muster. Id. at 2131.

A criminal defendant does not have an absolute right to withdraw a guilty plea. See United States v. Lampazianie, 251 F.3d 519, 523–24 (5th Cir. 2001). Rather, a defendant may withdraw a guilty plea after the court has accepted it, but prior to sentencing, only if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. Pro. 11(d)(2)(B). In determining whether a defendant has shown a fair and just reason, the Fifth Circuit applies the seven-factor test set forth in United States v. Carr, 740 F.2d 339, 343–44 (5th Cir. 1984). A district court must consider whether: (1) the defendant asserted his innocence; (2) withdrawal would cause the government to suffer prejudice; (3) the defendant delayed in filing the motion; (4) withdrawal would substantially inconvenience the court; (5) close assistance of counsel was available; (6) the original plea was knowing and voluntary; and (7) withdrawal would waste judicial resources. Id. A district court need not make findings as to each factor but should make its decision based on "the totality of the circumstances." United States v. Hughes, 726 F.3d 656, 662 (5th Cir. 2013).  The court should also consider, where applicable, the reasons why defenses advanced later were not proffered at the time of the original pleading and the reasons why a defendant delayed in making his withdrawal motion. See Carr, 740 F.2d at 344. Finally, the burden of establishing a fair and just reason for requesting withdrawal under Carr "rests with the defendant." United States v. Brewster, 137 F.3d 853, 858 (5th Cir. 1998).

4

## II. Analysis

### a. <u>Heller/Bruen Inquiry</u>

Under the first step of the Heller/Bruen inquiry, the Government argues that the Second Amendment's plain text – and the Supreme Court's decision interpreting that text – demonstrate that the Amendment does not prohibit the disarming of felons like French. See Record Document 30 at 13. According to the Government, Bruen concerned firearm regulations aimed at "law abiding citizens" and not a statute like Section 922(g)(1) whose own elements limit itself to regulating non-law-abiding citizens. See id. at 6.

French argues that applying Bruen's standard, the plain text of the Second Amendment covers the possession of a firearm that Section 922(g)(1) criminalizes. See Record Document 27 at 5. He argues first that the amendment's term "'[k]eep arms' was simply a common way of referring to possessing arms" at the time of the amendment. Id. (citing Heller, 554 U.S. at 583). Second, he argues that he is one of "the people" under the Second Amendment's plain text. Id. (citing Heller, 554 U.S. at 581) (noting that the Second Amendment right "belongs to all Americans")). French states that because the Second Amendment's plain text covers him as a member of "the people," the Second Amendment "presumptively protects" his possession of the firearm in this case. Id. at 6.

In both Heller and Bruen, the Supreme Court included the qualifier "law-abiding" when discussing those people who are facially protected by the Second Amendment. See Heller, 554 U.S. at 635 (holding the Second Amendment confers the "right of **law-abiding**, responsible citizens to use arms in defense of hearth and home") (emphasis added); Bruen, 142 S. Ct. at 2134 (emphasizing that the petitioners were "two ordinary, **law-abiding**, adult citizens" protected as "people" under the Second Amendment)

5

(emphasis added). The Heller Court apparently used this limitation to ensure that its holding would not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." Heller, 554 U.S. at 626–27. Thus, this Court is of the opinion that French, as someone who was convicted of two counts of possession with intent to distribute schedule II narcotics in 2018 and thus who is not "law-abiding," is not facially protected by the Second Amendment.

On the other hand, this Court acknowledges that "there is some debate over the extent to which the Court's 'law-abiding' qualifier constricts the Second Amendment's reach." United States v. Rahimi, 61 F.4th 443, 451 (5th Cir. 2023) *cert. granted*, No. 22-915, 2023 WL 4278450 (U.S. June 30, 2023). Rahimi did not involve a challenge to Section 922(g)(1). Instead, it considered a challenge to 18 U.S.C. § 922(g)(8), banning the possession of firearms by a person subject to a domestic violence restraining order. Id. In Rahimi, the Court stated that "Bruen clearly 'fundamentally changed' our analysis of laws that implicate the Second Amendment, ... rendering our prior precedent obsolete." Id. at 450-51. The Court went on to perform Bruen's textual and historical inquiry anew and found that § 922(g)(8) unconstitutionally breaches the Second Amendment right to keep and bear arms. See id.

At least one court has held in a case considering the constitutionality of Section 922(g)(1), post-Rahimi, that because a district court is "not free to overturn" decisions of the Fifth Circuit, "the authority to determine whether the Fifth Circuit's pre-Bruen precedent regarding the constitutionality of Section 922(g)(1) has been overturned by an intervening change in the law lies with the Fifth Circuit alone." United States v. Thompson,

No. 22-173, 2023 WL 3159617 at *4 (E.D. La. Apr. 27, 2023) (quoting In re Bonvillian Marine Serv., Inc., 19 F.4th 787, 789 (5th Cir. 2021) and citing its statement that "[w]hether an intervening Supreme Court decision merely illuminates or unequivocally overrules is a judgment call"); see also United States v. Jeffery, No. 21-437, 2023 WL 4629556, at *3 (W.D. Tex. July 19, 2023) (concluding, post-Rahimi, "that this Court is bound by a well-established line of Fifth Circuit precedent on Section 922(g)(1) that does not directly conflict with Bruen" and "is required to adhere to that precedent until the Fifth Circuit or Supreme Court dictate otherwise"); United States v. Hale, No. 22-131, 2023 WL 3866865, at *1 (E.D. La. June 6, 2023) (holding, post-Rahimi, that "[n]either Bruen nor Heller changed prior case law prohibiting non-law-abiding citizens from the right to bear arms") (citations omitted)).

Another district court stated that although Rahimi briefly touched on the "obsolescence" of prior precedent, the Court may have referred to fundamental changes in its "analysis of laws that implicate the Second Amendment," not prior holdings. United States v. Schnur, 23-65, 2023 WL 4881383 at *3 (S.D. Miss. July 31, 2023). The Schnur Court stated it was convinced that it remains guided by the Fifth Circuit's treatment of Section 922(g)(1). See id. at *4. This Court agrees with the conclusion in Schnur that it cannot ignore pre-Bruen Fifth Circuit precedent on the constitutionality of Section 922(g)(1) absent a Fifth Circuit or Supreme Court decision reaching the issue. See id.

Thus, this Court will analyze French's motion under the second step of the Heller/Bruen analysis in an abundance of caution like other district courts post-Rahimi. Under step two, the Government argues that even if the Second Amendment were to facially protect French as a convicted felon, prohibiting people like French from

7

possessing firearms under the historical context of the Second Amendment's plain text does not prevent Congress from disarming felons. See Record Document 30 at 8-9. This Court agrees and finds that the Government has met its burden of demonstrating that Section 922(g)(1) has analogues in our nation's history that justify the restriction on the Second Amendment right to bear arms in this case. See id. at 13-21.

Under the second step of the Heller/Bruen analysis, "the Government must point to 'historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation.'" Rahimi, 61 F.4th at 454 (quoting Bruen, 142 S. Ct. at 2131–32). "The Government need not identify a 'historical *twin*'; rather, a 'well-established and representative historical analogue' suffices." Id. (quoting Bruen, 142 S. Ct. at 2133). "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." Bruen, 142 S. Ct. at 2133.

The Government cites to a definition of a felony from 1769 which stated that a felony was "an offence for which occasions a total forfeiture of either lands, or goods, or both, at the common law; and to which capital or other punishment may be superadded, according to the degree of guilt." Record Document 30 at 13-14 (citing 4 William Blackstone, Commentaries on the Laws of England 95 (1st ed. 1769)). The Government also states that capital punishment and forfeiture of estate were also commonly authorized punishments in the American colonies (and then the states) up to the time of the founding. See id. at 14 (citing Folajtar v. Attorney General, 980 F.3d 897, 904-05 (3d Cir. 2020). Further, the Government notes that many American jurisdictions up through the end of the 1700s authorized complete forfeiture of a felon's estate. See id. (citing Beth

8

A. Colgan, Reviving the Excessive Fines Clause, 102 Cal. L. Rev. 277, 332 & n.275-276 (2014) (citing statutes)). A law in New York stated that a counterfeiter "shall be guilty of felony, and being thereof convicted, shall forfeit all his or her estate both real and personal to the people of this State, and shall be committed to the bridewell [correction house] of the city of New York for life, and there confined to hard labor." Id. at 15 (citing 2 Laws of the State of New York Passed at the Session of the Legislature (1785–1788) at 2661 (1886)). The Government also cited to cases from other circuits including the Sixth Circuit in Tyler v. Hillsdale County Sheriff's Department which stated that legislatures historically have authority to impose a firearms disability "as a legitimate consequence of a felony conviction." 837 F.3d 678, 708 (6th Cir. 2016) (en banc) (Sutton, J., concurring in most of the judgment). Given this evidence, among more cited within its opposition, the Government argues that Section 922(g)(1) is consistent with the nation's historical tradition of firearm regulation that felons can be dispossessed of firearms. See Record Document 30 at 21. The Court in Schnur considered similar evidence provided by the Government and found that given the historical support, Section 922(g)(1) passed constitutional muster under Bruen. See Schnur, 2023 WL 4881383 at *7-10.

This Court agrees and finds that Section 922(g)(1) passes constitutional muster under Bruen. Like the Court in Schnur, this Court also notes the virtual unanimity among the of district courts in the Fifth Circuit upholding Section 922(g)(1) considering Bruen. See, e.g., Montes v. United States, No. 21-38, 2023 WL 3688015 at *1 (S.D. Tex. May 26, 2023) (collecting cases upholding section 922(g)(1) after Bruen).

Additionally, French argues that the *dicta* in Bruen regarding the continuing validity of the statutory prohibition against firearms does not control the outcome of this case and

9

instead <u>Bruen</u>'s holding governs. <u>See</u> Record Document 27 at 8. The Supreme Court stated in <u>Heller</u> reiterated in <u>Bruen</u> that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." <u>Heller</u>, 554 U.S. at 626-27. Both Justice Alito and Justice Kavanaugh, who were joined by Chief Justice Roberts, expressed in their concurring opinions their explicit intent to leave undisturbed government regulations prohibiting the possession of firearms by felons. For example, Justice Alito stated: "Our holding decides nothing about who may lawfully possess a firearm ... Nor have we disturbed anything that we said in <u>Heller</u> or <u>McDonald v. Chicago</u> ... about restrictions that may be imposed on the possession or carrying of guns." <u>Bruen</u>, 142 S. Ct. at 2157 (Alito, J., concurring). Justice Kavanaugh's concurring opinion, joined by Chief Justice Roberts, provided additional support for felons in possession of firearms restrictions in the wake of <u>Bruen</u>, stating, "Properly interpreted, the Second Amendment allows a 'variety' of gun regulations," <u>id.</u> at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) and quoting <u>Heller</u>'s statement that "[n]othing in our opinion should be taken to cast doubt on 'longstanding prohibitions on the possession of firearms by felons.'" <u>Id.</u> (quoting <u>Heller</u>, 554 U.S. at 626-27, 128 S.Ct. 2783). The dissent also viewed the majority opinion statements in the same way. Justice Breyer, joined by Justice Sotomayor and Justice Kagan, stated, "I understand the Court's opinion today to cast no doubt on" <u>Heller</u>'s treatment of laws prohibiting firearm possession by felons. <u>Id.</u> at 2189 (Breyer, J., joined by Sotomayor, J., and Kagan, J., dissenting).

Lower courts "are generally bound by Supreme Court *dicta*," particularly when the *dicta* are "recent and detailed." <u>Hollis v. Lynch</u>, 827 F.3d 436, 448 (5th Cir. 2016); <u>see also</u> <u>United States v. Becton</u>, 632 F.2d 1294, 1296 n. 3 (5th Cir. 1980) ("We are not bound

10

by *dicta*, even of our own court ... *Dicta* of the Supreme Court are, of course, another matter."). Thus, because Bruen is in fact, binding precedent, and even if this language is characterized as *dicta*, at a bare minimum, it is entitled to great weight. See Schnur, 2023 WL 4881383 at n.6.

Thus, French's Motion to Dismiss the Indictment is **DENIED** under the Heller/Bruen analysis.

### b. Commerce Clause Element

French also argues that Section 922(g)(1) exceeds the scope of Congress's power to regulate interstate commerce. See Record Document 27 at 4. French concedes that this claim is foreclosed but brought it to preserve it for further review. See id. at 10-11. The Government argues that this Court should reject French's argument based on the interstate nexus element as it is settled law. See Record Document 30 at 21. The Court agrees with the Government. The Fifth Circuit and other circuit courts have consistently upheld Section 922(g)(1)'s constitutionality as a proper exercise of Congress's commerce power. See United States v. Mason, No. 23-36, 2023 WL 2589395 at *1 (N.D. Tex. Mar. 21, 2023) (citing United States v. Alcantar, 733 F.3d 143 (5th Cir. 2013); United States v. Daugherty, 264 F.3d 513, 518 (5th Cir. 2001) (collecting cases holding that § 922(g)(1) is a valid exercise of the commerce power); United States v. Gateward, 84 F.3d 670, 672 (3d Cir. 1996) ("We therefore join eight courts of appeal upholding the constitutionality of § 922(g)(1) as a valid exercise of the commerce power.")). Thus, the Motion to Dismiss regarding this element is also **DENIED**.

### c. Withdrawal of Guilty Plea

Federal Rule Criminal Procedure 11(d)(2)(B) allows a defendant to withdraw a plea of guilty after the court accepts the plea, but before it imposes sentence, if the defendant can show a fair and just reason for the withdrawal. French argues a marked shift in the law justifies the withdrawal of his plea. See Record Document 27 at 2. French asserts that Bruen and subsequent jurisprudence changed the law regarding the constitutionality of 18 U.S.C. § 922(g)(1), the charge to which French pled guilty. See Record Document 27 at 3. He states that because of this jurisprudence and shift in the law, even though he had the close assistance of counsel, his original plea was not made knowingly and voluntarily. See id. at 2. The Court notes that a marked shift in the law constitutes a fair and just reason for withdrawal of a guilty plea. See United States v. Bocanegra-Lupian, No. 18-240, 2019 WL 2329879 at 3 (S.D. Tex. 2019).

French cites to a Rahimi and United States v. Daniels, 77 F.4th 337 (5th Cir. 2023), as authority for the shift in law and his decision to withdraw his guilty plea. There are obvious distinctions between Rahimi, Daniels, and the present case. French is a convicted felon, while Rahimi and Daniels were not convicted felons and were covered by the plain text of the Second Amendment. See United States v. Haynes, 2023 WL 5673962 at *5 (W.D. La. Sept. 1, 2023). Further, Rahimi considered the constitutionality of Section 922(g)(8) and Daniels considered Section 922(g)(3), not Section 922(g)(1). See Rahimi, 61 F.4th at 448; See Daniels, 77 F.4th at 339.

Additionally, in a recent unpublished opinion by the Fifth Circuit, the defendant had two primary arguments to support his position that his guilty plea was invalid, and those arguments were much like those made in the current case. See United States v. Smith,

12

No. 22-10795, 2023 WL 5814936 at *1 (5th Cir. Sept. 8, 2023). First, Smith argued that Section 922(g) is unconstitutional because it does not have a substantial effect on interstate commerce and thus exceeds Congress's authority under the Commerce Clause. Id. at *1. Second, he argued that Bruen supported a finding that Section 922(g)(1) infringes upon his Second Amendment right to bear arms and is, therefore, unconstitutional. Id. The Smith court cited to another unpublished opinion in which the Fifth Circuit court observed that "there is no binding precedent explicitly holding that Section 922(g)(1) is unconstitutional on its face." United States v. Garza, No. 22-51021, 2023 WL 4044442, at *1 (5th Cir. June 15, 2023); see also Smith, 2023 WL 5814936 at *3; see also United States v. Jackson, No. 23-89, 2023 WL 6881818, at *3 (N.D. Miss. Oct. 18, 2023). Consequently, the Smith court found that the district court did not err by accepting the defendant's guilty plea given the lack of binding authority deeming Section 922(g)(1) unconstitutional. See Smith, 2023 WL 5814936 at *3.

This Court is barred by Fifth Circuit precedent on this issue. Therefore, the Motion to Withdraw Guilty Plea on this basis is also **DENIED**.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Withdraw Guilty Plea and to Dismiss the Indictment (Record Document 27) is **DENIED**.

An order consistent with the terms of this ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this the 7th day of November, 2023.

S.MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT